IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GLENDA MCCOY, and JON ROBERT MCCOY, themselves as PLAINTIFFS, and on behalf of decedents JON ANDREA ROBERTS, MICAYLA ROBERTS and DYLAN ROBERTS,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC., and GREENSTONE PHARMACEUTICALS, LLC,<br><br>Defendants. | Civil Action No. 4:09cv496<br><br>JUDGE:  MICHAEL H. SCHNEIDER |

**DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY
AND REPORT OF THOMAS RONEY**

Defendants Pfizer Inc. and Greenstone Pharmaceuticals LLC ("Defendants") move for an order excluding the testimony of Thomas Roney on the grounds that his testimony and calculations of Andrea Roberts's alleged lost earning capacity, including household services and benefits, are neither relevant nor reliable and therefore do not meet the scientific standards required under Federal Rules of Evidence 702 and 703, and the principles embodied therein.

## INTRODUCTION

Plaintiffs Glenda and Jon Robert McCoy allege that ingestion of the prescription antidepressant sertraline[1] caused their daughter, Jon Andrea Roberts ("Roberts"), to first murder her husband and two children, and then commit suicide.  They bring a wrongful death claim under section 71.004 of the Texas Civil Practice & Remedies Code and have designated Thomas Roney, an economist, to testify regarding economic damages.

---

[1] Sertraline is the generic form of Zoloft®, a proprietary form of sertraline manufactured by Pfizer Inc.  Sertraline is a member of the class of antidepressant medications known as selective serotonin reuptake inhibitors, or "SSRIs."

**DEFENDANTS' MOTION TO EXCLUDE THE
TESTIMONY AND REPORT OF THOMAS RONEY**    **- 1 -**

The only economic damages recoverable in a wrongful death claim for which an economist's testimony might be admissible are lost pecuniary contributions by the decedent to his or her statutory beneficiaries, in this case Mr. and Mrs. McCoy[2] and any loss of inheritance to them. But the undisputed evidence establishes that (i) Roberts had never provided any financial support to her parents; (ii) she and her husband were deeply in debt and had no savings of any kind; and (iii) Roberts was a stay-at-home mother with no intention of returning to the workforce in the foreseeable future. Mr. Roney ignored this evidence. Instead, he calculated Roberts's lost earning capacity, which he knows is an incorrect measure of damages, based on the unfounded assumption that she would begin working the day after her death and continue to work for the rest of her work-life expectancy and concluded that she would somehow wind up providing over a million dollars to her parents by including amounts she would have earned after her parents died.

Defendants move to exclude Mr. Roney's testimony and report because he based his calculations on an incorrect measure of damages, ignored key factual information, relied on assumptions shown by undisputed evidence to be completely false, and used the wrong data tables. His opinions are therefore irrelevant and unreliable and should be excluded.

## ARGUMENT

**A.    LEGAL STANDARD**

The party offering an expert's opinion has the burden of establishing that 1) the expert is qualified; 2) the testimony is relevant to the issues in the case; and 3) the testimony is based upon a scientifically reliable foundation. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579

---

[2] The parents, individually, are the only remaining statutory beneficiaries of this wrongful death claim. The estate of Andrea Roberts and her children Micayla and Dylan Roberts cannot assert a wrongful death claim. *See* Tex. Civ. Prac. & Rem. Code § 71.004(a) ("An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.").

**DEFENDANTS' MOTION TO EXCLUDE THE**
**TESTIMONY AND REPORT OF THOMAS RONEY      - 2 -**

(1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Courts examine the principles and methodology employed by an expert to determine whether his or her testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 594-95; FED. R. CIV. P. 702.

*Daubert's* general principles apply not only to scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho,* 526 U.S. at 141, 149. *See e.g., Marcel v. Placid Oil Co.*, 11 F.3d 563, 567-68 (5th Cir. 1994) (applying *Daubert* to exclude expert economist testimony); *Garcia v. Columbia Medical Center,* 996 F. Supp. 617, 621 (E.D. Tex. 1998) (*Daubert* principles applied to economist's testimony). Indeed, courts have been increasingly critical of expert economists' testimony:

> For years, we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. (citations omitted) *Post hoc ergo propter hoc* will not do; nor the enduing of simplistic extrapolation and childish arithmetic with the appearance of authority by hiring a professor to mouth damage theories that make a joke out of the concept of expert knowledge.

*Schiler & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992).

Mr. Roney's opinions and methodology will not assist the jury in this case because he used the incorrect legal standards for recovery, ignored key factual information, made false assumptions, and admitted to having made mistakes in his calculations. (Roney Dep. 56:3-5, Dec. 8, 2011, Ex. A). His testimony, opinions and report are neither relevant nor reliable and should therefore be excluded.

**B.** **THOMAS RONEY'S TESTIMONY AND REPORT ARE IRRELEVANT BECAUSE THEY PERTAIN TO A MEASURE OF DAMAGES THAT IS NOT RECOVERABLE.**

A fundamental tenet of the Federal Rules of Evidence is that evidence must be relevant. FED. R. CIV. P. 401. Indeed, Rule 702's requirement that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" is born out of Rule 401's requirement that the "fact is of consequence in determining the action." *See Daubert*, 509 U.S. at 592. Here, Mr. Roney's testimony and report are irrelevant because they pertain to Roberts's lost earning capacity, which is not a recoverable measure of damages in a Texas wrongful death claim. *See* Texas PJC 16.6 (2010); *Gulf States Utilities Co. v. Reed*, 659 S.W.2d 849, 853 (Tex. App.—Houston [14th Dist.] 1983, writ denied).

In Texas, surviving parents can recover only two types of economic damages for the wrongful death of an adult child: 1) probable future pecuniary contributions the deceased would have made to her parents had she survived, *Elliot v. Hollingshead*, 327 S.W.3d 824, 834 (Tex. App.—Eastland 2010, no pet.); and 2) loss of inheritance, which is "the present value that the deceased, in reasonable probability, would have added to the estate and left at natural death to the statutory wrongful death beneficiaries." *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 633 (Tex. 1986). Yet Mr. Roney calculated neither of these types of damages. In fact, neither one was even mentioned in his report. Instead, Mr. Roney calculated the lost earning capacity of Andrea Roberts, assuming she would have started working the day after her death and for 14.01 years thereafter:

> Q: And what were you asked to do in this case?
>
> A: I was asked to calculate the loss for the – I guess the lost *earning capacity* for a husband and wife, and I calculated the loss of earnings benefits and home services.

> Q: So you were asked to calculate the lost earning capacity, including household services and benefits, that Andrea Roberts and Michael Roberts each individually would have earned or that – that they had the ability to earn for the rest of their life if they lived to a normal life expectancy.
>
> A. Yes, sir.

(Roney Dep. 25:12-23, Ex. A (emphasis added); *see also id.* at 35:2-14).

Roney did so even though he was well-aware that loss of earning capacity is a damage element for a personal injury claim and is not recoverable in a wrongful death action. He was a contributor to an article that acknowledged that the proper measure of damages in a Texas wrongful death case is lost pecuniary contributions the deceased would have made had she survived and loss of inheritance. *See* Stephen M. Horner, *Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of Texas*, 20 Journal of Forensic Economics 49, 64 (2007) (attached as Exhibit B). Mr. Roney chose to disregard the legal measure of damages contained in an article to which he contributed, and instead performed meaningless calculations that yielded much higher, but totally irrelevant, amounts:

> Q: And do you understand, sir, that in – in a Texas wrongful death case, the measure of damages for the recovery by parents of someone who is deceased is the loss of what financial report – the loss of what financial support those parents would have expected to receive from their child had the child lived?
>
> A: Yes.
>
> Q: You haven't calculated that in this case have you, sir?
>
> A: No, I've only calculated as directed by the attorney the amount available, that would have been available; and how that money was – would have been distributed, that wasn't my charge.
>
> \*\*\*\*\*\*\*\*\*\*
>
> Q: You have not made any calculation of loss of inheritance in this case, have you, sir?

> A: No, sir, but calculated the loss of money that would have been available to any survivors.

(Roney Dep. 35:2-14; 37:11-14, Ex. A). An expert should not be allowed to testify about an economic calculation that bears no relationship to the damages that are recoverable under Texas law. Such testimony is irrelevant and, therefore, Mr. Roney's testimony and report must be excluded.

C. **MR. RONEY'S OPINIONS AND METHODOLOGY ARE UNRELIABLE BECAUSE HE MADE FALSE ASSUMPTIONS AND IGNORED AVAILABLE FACTS.**

In addition to being irrelevant, Mr. Roney's opinions and methodology are unreliable because he ignored undisputed facts specific to Ms. Roberts and instead made assumptions that are clearly contrary to the uncontroverted evidence. When calculating the present value of damages in a wrongful death action, "the figures used in the analysis must be specific to the decedent." *Columbia Med. Ctr. of Las Colinas v. Hogue*, 271 S.W.3d 238, 255 (Tex. 2005). Facts specific to the decedent cannot be ignored, and assumptions cannot be contrary to undisputed facts. *Id*. For example, in *Hogue*, an expert's testimony and report were insufficient to support an award of loss of inheritance damages because the expert's calculations were not based on decedent-specific data. *Id*. There, the expert used some decedent-specific data such as past work history, earnings, and savings, but ignored other facts such as the decedent's health and the decedent's mortgage. *Id*. Because those two facts were not taken into account, the Texas Supreme Court held that the evidence was insufficient to uphold a damage award. *Id*.

Here, Thomas Roney used even less decedent-specific data in making his calculations than the expert in *Hogue* and made some assumptions that are contrary to undisputed facts. Most of his calculations were performed using national averages or information he has not verified or knows to be untrue. For example, Mr. Roney calculated Ms. Roberts's lost earning

capacity based on the assumption that she would begin to work on the day following her death. According to her mother, father, brother, and friends, though, Ms. Roberts was a stay-at-home mom who had no plans to return to full-time work. (Glenda McCoy Dep. 171:13-16; 172:7-9; 252:14-18, Aug. 15, 2011, Ex. C; John Robert McCoy Dep. 42:12-43:5, Aug. 16, 2011, Ex. D; John Andrew McCoy Dep. 116:9-117:10, Oct. 12, 2011, Ex. E; Biggs Dep. 59:22-60:14, Oct. 3, 2011, Ex. F; Dawson Dep. 52:5-13, Oct. 21, 2011, Ex. G; Timmons Dep. 91:11-92:14, Oct. 19, 2011, Ex. H; Skaar Dep. 36:22-37:15, Oct. 3, 2011, Ex. I; Marcus Roberts Dep. 21:13-16, Oct. 11, 2011, Ex. J). In fact, all of the evidence indicates that Ms. Roberts intended to remain at home to care for her small children. (*See* Exhibits C - J *supra* Deps. of Glenda McCoy, John Robert McCoy, John Andrew McCoy, Carmen Biggs, Jill Dawson, and Michele Timmons). Mr. Roney disregarded this evidence, most of which plaintiffs' counsel had not provided to him:

> Q: Oh, I see. So what you did was you calculated how much money you believe she could have earned had she chosen to go back to work, the day after she committed suicide, even though there's no evidence that she planned to do that.
>
> A. Yes.

(Roney Dep. 42:5-10, Ex. A).

He also assumed that she would receive benefits from this imagined employer for health insurance and retirement savings to increase the values set forth in his report, but then he did not account for any consumption of these benefits by Ms. Roberts. (*Id.* at 56:6-19). He also made no effort to determine the actual consumption habits of Ms. Roberts or her husband, electing instead to just use the averages found in government tables, even though the financial condition of the Roberts was anything but average. (*Id.* at 52:15-23).

Mr. Roney considered almost no evidence specific to Roberts in making his calculations. He had no tax records or earning records (*Id.* at 48:18-20); did not know what her previous

employment was or the type of work she did in the past; (*Id.* at 49:10-15); had no idea what her earnings were in the past when she had worked; (*Id.* at 49:16-18); or the kind of job she would have had if she had gone back to work. (*Id.* at 49:19-21). He just used some table of median earnings for women with a high school degree to assume that she would have earned $30,000 in 2008 dollars and $40,000 in 2022 dollars. (*Id.* at 49:22-50:1). This is insufficient data upon which to consider testimony reliable.

      Mr. Roney's report also included a calculation of "home services" from the date of death until Roberts's Full Function Life Expectancy based on the unfounded assumption that Plaintiffs lost household services that would be provided by Roberts had she not died. (Ex. K, p. 7, Report of Thomas Roney). But the McCoys did not share a household with Ms. Roberts, and it is unlikely that Ms. Roberts would have provided such services to her parents considering she lived in Texas and they lived in Missouri. (John Robert McCoy Dep. 6:10-13, Ex. D). Mr. Roney admitted that he has no evidence that Ms. Roberts ever provided any household services for her mother and father or that there was ever any expectation on the part of Mr. and Mrs. McCoy that their daughter would ever provide any household services to them in the future. (Roney Dep. 50:19-51:2, Ex. A). He also admitted that he has no reason to believe that she was ever going to provide any household services for her parents. (*Id*. at 52:3-14). Nevertheless, Mr. Roney ignored these facts and calculated an amount for such damage by simply using figures from a government table. (*See* Ex. K, p. 7, Report of Thomas Roney). Without any data or evidence to support this calculation, it is mere speculation, is unreliable, and should be excluded.

      Roney also admits that he has seen no evidence that Roberts had ever provided financial support to her parents or that the McCoys ever anticipated financial support from their daughter.

(Roney Dep. 35:15-36:2, Ex. A). That is another reason the court should not allow him to testify regarding loss of pecuniary contributions.

Roney's testimony and opinions are also unreliable, and should therefore be excluded, because they ignore key factual information. His recent deposition testimony shows that he was completely ignorant of the extreme financial problems the Roberts were facing and therefore failed to account for this in his calculations:

> Q: Now, the - Mr. and Mrs. Roberts were not in very good financial shape, were they, sir?
>
> A: I didn't receive any information about their financial shape.
>
> Q: Well, did you receive documents showing that they owed some $290,000 to the Internal Revenue Service?
>
> A. No, sir.
>
> Q. Were you advised of that fact?
>
> A. Last night I was.
>
> Q. So you did not take into account the fact that the Roberts owed a substantial amount of money to the IRS?
>
> A. No, sir.
>
> Q. Were you advised that the Roberts had a very significant credit card debt?
>
> A. No, sir.
>
> Q. And so you did not take that into account in making your financial contribu -- your financial calculations, did you, sir?
>
> A. No, sir.

(Roney Dep. 37:15-38:10, Ex. A).

Mr. Roney did not know – and therefore did not consider in forming his opinions - whether the Roberts owned their home or whether they had any savings. (*Id.* at 48:3-8). He had

no bank statements, no credit card statements, no mortgage statements, no tax records and no earnings reports. (*Id.* at 48:12-20). In fact, he had no financial documents whatsoever for the Roberts:

> Q: Have you been given any financial records pertaining to Mr. and Mrs. Roberts?
>
> A: No, sir.

(*Id*. at 48:9-11). Indeed, it was not until the morning of his deposition that he learned that the IRS had filed two tax liens against the Roberts, one for $251,472.97 and the other for $39,349.66. (*Id*. at 63:6-64:7).

In sum, Mr. Roney did not consider or even review any of the available evidence concerning the Roberts's financial situation and, consequently, he drew demonstrably false conclusions concerning the amount "that would have been available." (*See id.* at 35:11-14). His report and testimony substitute assumption and conjecture for undisputed facts that are specific to Roberts. Expert opinions based on "facts" that are not within the expert's personal knowledge and are not shown to have any reliable basis are not based upon a reliable foundation. *Daubert*, 509 U.S. at 595. They therefore fail to comply with Rules 702 and 703 and should be excluded.

**D.  THOMAS RONEY ADMITTED THAT THERE ARE "MISTAKES" IN HIS CALCULATIONS.**

Mr. Roney admitted that he made "mistakes" in his calculations by twice pulling figures from the wrong government tables, further evidencing that his methodology and opinions are unreliable and should be excluded. (*See* Roney Dep. 55:7-18; 56:3-5, Ex. A).

First, Mr. Roney used the life expectancy for the wrong person when he calculated economic losses allegedly incurred by the Plaintiffs. Even if there was evidence that Roberts was going to provide pecuniary contributions to her parents in the future, which there is not, the proper measure of damages would be the pecuniary contributions based on the *parents*' life

expectancies, not *Roberts's*. But instead of using the parents' life expectancy, Mr. Roney based his calculations on Roberts's work life expectancy. She was 41 years old when she died, and her parents were significantly older, so their respective life expectancies were far less than Roberts's remaining work-life expectancy. When confronted about this error, Mr. Roney acknowledged his calculation may not be helpful to a jury:

> Q: Now, even if, hypothetically, Andrea Roberts were to provide any financial contributions to her parents, you would have to base that on the life expectancy of her mom and dad, right?
>
> A: That's correct.
>
> Q: And you've made calculations like that in other wrongful death cases, haven't you?
>
> A: To the life expectancy of the survivors?
>
> Q: Yes.
>
> A: Yes, I have.
>
> Q: Yes, because in order to fairly and reasonably calculate the amount of support that would go to a survivor, you have to know what the survivor's life expectancy is, don't you?
>
> A: It would be a – one measure, yes.
>
> **********
>
> Q: Well, you would not – you would not calculate that somebody's going to live 20 years beyond their normal life expectancy in making a scientific economic calculation, would you, sir?
>
> A: I would calculate if I was asked to by the attorney.
>
> Q: Okay. But that wouldn't be a reasonable thing to do, would it?
>
> A: Well, I – I imagine the jury would put a lower weight on that type of calculation.

(*Id.* at 36:3-37:10).

Mr. Roney also erred by using the wrong table of values when calculating a value for lost household services. Mr. Roney admitted that he inadvertently used values from a table for a woman who is not employed, when he should have used the values from a table for a woman who is employed to be consistent with his initial assumption that Ms. Roberts would re-enter the workforce:

> A: I – in the report I quoted that [the average values for home services] were for a working spouse and inadvertently used the one for a not-employed spouse. The working spouse numbers would be lower than the – not employed.
>
> Q: So in your report, you said you were using numbers for a working woman, but you actually used the table for a woman who is not working?
>
> A: Correct.
>
> **********
>
> Q: So you used the wrong table.
>
> A: Yes. It's – in economics we call it a mistake.

(*Id.* at 55:7-18; 56:3-5). This mistake inflated the numbers in his calculation. (*Id*. at 55:9-10).

Mr. Roney's use of the wrong life expectancy and the wrong actuarial table for household services has tainted his calculations and shows they are unreliable. By acknowledging that his calculations are based on incorrect data, Mr. Roney admitted that his conclusions as to the damage amounts are also incorrect. An inaccurate calculation of damages would not assist the trier of fact in determining any issue in this case. Accordingly, Mr. Roney's testimony and report should be excluded.

## **CONCLUSION**

Thomas Roney used the wrong measure of damages, used incorrect data in making his calculations, and ignored key facts specific to Andrea Roberts. His report and testimony are

based solely on faulty assumptions and averages rather than the undisputed facts. His calculation of "lost earning capacity" is irrelevant, so even if he had done it correctly, that opinion must be excluded. Mr. Roney's opinions are not grounded in sound scientific methodology and would not assist the trier of fact in determining any issue. Therefore, Defendants ask the Court to exclude Mr. Roney's testimony and report.

Dated: December 22, 2011

Respectfully submitted,

*s/ John H. Martin*
John H. Martin
Texas Bar No. 13086500
John.Martin@tklaw.com

Jennifer P. Henry
Texas Bar No. 15859500
Jennifer.Henry@tklaw.com

Brian Andrews
Texas Bar No. 24064822
Brian.Andrews@tklaw.com

Thompson & Knight LLP
1722 Routh Street
Dallas, Texas 77002
Telephone: (214) 969-1700
Facsimile: (214) 999-1509

James E. Hooper
Colorado Bar No.
hooper@wtotrial.com

Andrew H. Myers
Colorado Bar No.
myers@wtotrial.com

Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile: (303) 244-1800

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a true and correct copy of **DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF THOMAS RONEY** was served via manner indicated below this 22nd day of December, 2011 to the following:

| | |
|---|---|
| Thomas M. Corea, Esq. | (  ) First Class Mail |
| Jessica S. Graham, Esq. | (  ) Hand Delivery |
| The Corea Firm P.L.L.C. | (  ) Facsimile [214-953-3901] |
| The Renaissance Tower | (  ) Overnight Delivery |
| 1201 Elm Street, Suite 4150 | ( x ) E-Mail via Electronic Filing System |
| Dallas, TX  75270 | |
| Telephone: 214-953-3900 | |
| Facsimile:  214-953-3901 | |

*Attorneys for Plaintiffs*

                 *s/ John H. Martin*

## CERTIFICATE OF CONFERENCE

  Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and this motion is opposed. The personal conference required by Rule CV-7 was conducted on December 27, 2011 via telephone between Andrew Myers, attorney for Defendants, and Jessica Graham, attorney for Plaintiffs, and no agreement could be reached because there is a disagreement over the relevance and admissibility of Mr. Roney's testimony. Discussions have ended in an impasse leaving an open issue for the Court to resolve.

              Signed: /s/ Andrew Myers_____
                  Andrew Myers